NO. 23-15911

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

HEY, INC.,

PLAINTIFF–APPELLEE,

v.

TWITTER, INC.,

DEFENDANT–APPELLEE,

v.

JOHN DOE 1; JOHN DOE 2,

MOVANTS–APPELLANTS.

On Appeal from the United States District Court
for the Northern District of California
The Honorable Donna M. Ryu
District Court Case No. 4:22-mc-80034-DMR

**BRIEF OF AMICI CURIAE AMERICAN CIVIL LIBERTIES UNION OF
NORTHERN CALIFORNIA, IN SUPPORT OF MOVANTS–APPELLANTS**

Matthew T. Cagle (SBN 286101)
    *Counsel of record*
Nicolas A. Hidalgo (SBN 339177)
Nicole A. Ozer (SBN 228643)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
mcagle@aclunc.org
nhidalgo@aclunc.org
nozer@aclunc.org

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(a)(4)(A) of the Federal Rules of Appellate Procedure, *amici curiae* state that they do not have a parent corporation and that no publicly held corporation owns 10% or more of their stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iv

STATEMENT OF INTEREST .......................................................................... vii

STATEMENT REGARDING ORAL ARGUMENT .......................................... viii

SOURCE OF AUTHORITY TO FILE ............................................................... viii

FED. R. APP. P. 29(a)(4)(E) STATEMENT ...................................................... viii

INTRODUCTION & SUMMARY OF ARGUMENT ............................................ 1

ARGUMENT ........................................................................................................ 3

    I.   Anonymous Online Speech is Important and Widespread on U.S.-based Platforms ..................................................................................................... 3

        A.  Free Speech is a Foundational Principle of The United States and Its Protections Apply Online. ........................................................................ 3

        B.  Online Speech on U.S.-based Platforms Can Originate Anywhere and Reach a Global Audience. ....................................................................... 4

    II.  Section 1782 Should Not Be Used to Circumvent the Rigorous *Highfields* Test for Unmasking Anonymous Online Speakers. ..................................... 7

        A.  The *Highfields* Test for Unmasking Anonymous Speakers Protects Free Speech ................................................................................................. 8

        B.  The Section 1782 *Intel* Test was Not Designed to Help Courts Decide When to Unmask Anonymous Online Speakers and Routinely Fails to Protect Free Speech as a Result ........................................................... 10

    III. Foreign and Domestic Litigants are Exploiting Section 1782 to Improperly Unmask Anonymous Online Speakers on U.S.-Based Platforms ............... 13

A. Foreign Plaintiffs Frequently Exploit Section 1782 to Unmask Online Critics. ................................................................14

B. American Plaintiffs Are Exploiting Section 1782 to Circumvent U.S. Free Speech Protections. .......................................................17

IV. U.S. Courts Should Apply the *Highfields* Test to All Section 1782 Applications Seeking to Unmask Anonymous Online Speakers. ..............19

A. Applying *Highfields* to all Section 1782 Unmasking Cases Is Compatible with the Statute's Purposes................................................19

B. *Highfields* Should Apply to all Section 1782 Unmasking Applications Due to the Compelling Free Speech Interests of U.S. Audiences, Platforms, and Courts. .......................................................22

CONCLUSION ...................................................................28

CERTIFICATE OF SERVICE FOR ELECTRONIC FILING ................................1

CERTIFICATE OF COMPLIANCE.......................................................2

# TABLE OF AUTHORITIES

## CASES

*Baugher v. GoDaddy.com LLC*, No. MC-19-00034-PHX-JJT, 2021 WL 4942658 (D. Ariz. Oct. 22, 2021) ......................................................................1

*Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972) .........................................25

*David v. Kazal*, 142 S. Ct. 1674 (2022) .................................................................25

*Dendrite Intern., Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001) .............................................................................................................8, 14

*Desai v. Hersh*, 719 F. Supp. 670 (N.D. Ill. 1989) ................................................25

*Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) ...................4

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ................................................................................ viii

*Gonzalez v. Google LLC*, 598 U.S. 617 (2023) .................................................... viii

*Herbert v. Lando*, 441 U.S. 153 (1979) .................................................................28

*hey, Inc. v. Twitter, Inc.*, No. 22-MC-80034-DMR, 2023 WL 3874022 (N.D. Cal. June 6, 2023) .............................................................................................24

*Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005)... passim

*In re Al-Baldawi*, No. 5:22-MC-80329-EJD, 2023 WL 3603731 (N.D. Cal. May 23, 2023) ...................................................................................................16

*In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011) .........................2

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 868 (N.D. Cal.) ..8, 9

*In re DMCA Subpoena to Reddit, Inc.*, 383 F. Supp. 3d 900 (N.D. Cal. 2019) ......23

*In re Eshelm*an, No. 5:23-MC-80015-EJD, 2023 WL 3361192 (N.D. Cal. May 9, 2023) ......................................................................................... 12, 17, 18, 19

iv

*In re PGS Home Co. Ltd.*, No. 19-MC-80139-JCS, 2019 WL 6311407 (N.D. Cal. Nov. 25, 2019) ........................................................................... 21

*In re Plan. & Dev. of Educ., Inc.*, No. 21-MC-80242-JCS, 2022 WL 228307 (N.D. Cal. Jan. 26, 2022) ………………………………………………………………………15, 28

*In re Sungrove Co., Ltd.*, No. 23-MC-80080-BLF, 2023 WL 2699987 (N.D. Cal. Mar. 28, 2023) ......................................................................... 16

*In re Takada*, No. 22-MC-80221-VKD, 2023 WL 1452080 (N.D. Cal. Feb. 1, 2023) ......................................................................................... 21

*In re Team Co., Ltd.*, No. 22-MC-80183-VKD, 2023 WL 1442886 (N.D. Cal. Feb. 1, 2023) ............................................................................. 15

*In re Yasuda*, No. 19-MC-80156-TSH, 2019 WL 7020216 (N.D. Cal. Dec. 20, 2019) ......................................................................................... 21

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ............... passim

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) ...................................... 3

*Med. Corp. Seishinkai v. Google LLC*, No. 5:22-MC-80282-EJD, 2023 WL 3726499 (N.D. Cal. May 30, 2023) ........................................................... 16

*Mirza v. Yelp, Inc.*, No. 21 MISC. 621 (LGS), 2021 WL 3772039 (S.D.N.Y. Aug. 25, 2021) ............................................................................... 16

*Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Twp.*, No. 12-CV-10803, 2014 WL 10319321 (E.D. Mich. July 2, 2014) ............................................................ 9

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) .................................. 2, 3, 27

*Palko v. State of Connecticut*, 302 U.S. 319 (1937) .................................................. 3

*Reno v. ACLU*, 521 U.S. 844 (1997) ................................................................ viii, 3

*SaleHoo Grp., Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210 (W.D. Wash. 2010) ............. 1

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ............................................. 28

*Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009) ............................. 9

*Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) .............. 4

*Stanley v. Georgia*, 394 U.S. 557 (1969) ................................................. 25

*Thunder Studios, Inc. v. Kazal*, 13 F.4th 736 (9th Cir. 2021) ................................ 25

*Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216 (N.D. Cal. Sept. 9, 2021) ............................................. 1, 8, 17, 21

*Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) ...................................................... viii

*Uchida v. YouTube, LLC*, No. 22-MC-80155-JSC, 2022 WL 4923241 (N.D. Cal. Oct. 3, 2022) ............................................................................. 16

*United States v. 18 Packages of Mags.*, 238 F. Supp. 846 (N.D. Cal. 1964) .......... 26

*Yelp, Inc. v. Hadeed Carpet Cleaning, Inc.*, 289 Va. 426 (2015) ........................... 26

*Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697 (N.D. Cal. 2022) .............. 12, 22

**CODES**

28 U.S.C. § 1782 ............................................................................. passim

## STATEMENT OF INTEREST

The ACLU of Northern California is the Northern California affiliate of the American Civil Liberties Union (ACLU), a nationwide, nonprofit, nonpartisan organization dedicated to defending the principles embodied in the Federal Constitution and our nation's civil rights laws. The ACLU and its affiliates share a longstanding commitment to freedom of speech and digital rights. The California ACLU affiliates have a statewide Technology and Civil Liberties Program, founded in 2004, which works specifically on legal and policy issues at the intersection of new technology and privacy, free speech, and other civil liberties and civil rights. Since its founding in 1920, the ACLU has frequently appeared before the U.S. Supreme Court, this Court, and other federal courts in cases related to free speech and freedom of association, including exercise of those rights online. *See, e.g., Reno v. ACLU*, 521 U.S. 844 (1997) (counsel); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (amici); *Gonzalez v. Google LLC*, 598 U.S. 617 (2023) (amici); *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) (amici).

## STATEMENT REGARDING ORAL ARGUMENT

*Amici curiae* submit that oral argument is appropriate in this case because the free speech questions on appeal are issues of significant importance that have not yet been resolved in this Circuit. *Amici curiae* respectfully seek leave to participate in oral argument on those questions, because their participation may be helpful to the Court in addressing the important issues presented by this appeal.

## SOURCE OF AUTHORITY TO FILE

Counsel for *amici curiae* have filed an accompanying Motion for Leave to File Brief of Amici Curiae pursuant to Federal Rule of Appellate Procedure 29(a) and Circuit Rule 29-3.

## FED. R. APP. P. 29(a)(4)(E) STATEMENT

*Amici* declare that:

1. no party's counsel authored the brief in whole or in part;

2. no party or party's counsel contributed money intended to fund preparing or submitting the brief; and

3. no person, other than amici, their members, or their counsel, contributed money intended to fund preparing or submitting the brief.

## INTRODUCTION & SUMMARY OF ARGUMENT

People must be able to speak anonymously on U.S.-based online platforms without fear that litigious companies and individuals will be able to easily circumvent established free speech protections and obtain their identities. In this case, hey, Inc. ("hey" or "Plaintiff") sought to unmask two anonymous online critics by using a federal statute designed to assist discovery in foreign proceedings. The district court granted the request while refusing to apply the test articulated in *Highfields Cap. Mgmt., L.P. v. Doe* (referred to here as the "*Highfields* test"), which requires a party seeking the identity of an anonymous online speaker to demonstrate a prima facie case on the merits of their underlying claim, after which courts balance the need for that discovery against the free speech interests at stake. 385 F. Supp. 2d 969, 974–75 (N.D. Cal. 2005). The district court erred in determining that because the dispute involved the prospect of foreign litigation, *Highfields* was not required in these circumstances.

This Court should not allow plaintiffs to evade the well-established[1] *Highfields* protections for free speech simply because the plaintiff's application

---

[1] District courts in this Circuit routinely apply the *Highfields* test to cases involving attempts to unmask anonymous speakers. *See Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216 (N.D. Cal. Sept. 9, 2021) (applying *Highfields*); *Baugher v. GoDaddy.com LLC*, No. MC-19-00034-PHX-JJT, 2021 WL 4942658 (D. Ariz. Oct. 22, 2021) (same); *SaleHoo Grp., Ltd.*

invokes 28 U.S.C. § 1782 ("Section 1782"), a federal law designed to assist with foreign litigation discovery. The United States has a "profound national commitment" to free speech. *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The right to speak anonymously is a key component of that free speech. These speech protections are especially important in the modern internet era where many users speak anonymously online via services with global reach, exposing them to possible litigation abroad.

Corporations and individuals have taken notice that courts are inconsistently applying *Highfields* and have tried to exploit the Section 1782 standard to unmask anonymous online speakers. Indeed, *amici* have started to see Americans bringing Section 1782 cases to unmask American speakers. Recently, an American pharmaceutical tycoon filed a Section 1782 application in the Northern District of California to unmask an anonymous Google user and American citizen. In the global internet era, use of the statute in this way allows plaintiffs to circumvent free speech protections and cannot be allowed to continue.

The Court should make it clear that district courts must apply the *Highfields* test to all attempts to unmask anonymous online speakers on U.S. platforms using Section 1782. Doing so is critical to safeguard free speech interests of all

_____

*v. ABC Co.*, 722 F. Supp. 2d 1210 (W.D. Wash. 2010) (same). Though this Court has yet to formally adopt it. *In re Anonymous Online Speakers*, 661 F.3d 1168, 1175 (9th Cir. 2011) (mentioning the *Highfields* test without formally adopting it).

anonymous speakers on U.S.-based services, protect the rights of U.S. audiences to receive speech, support the flourishing of free speech on U.S.-based services, and uphold the federal courts' responsibility to protect constitutional principles.

## ARGUMENT

**I.**   **Anonymous Online Speech is Important and Widespread on U.S.-based Platforms.**

    **A.**   <u>Free Speech is a Foundational Principle of The United States and Its Protections Apply Online.</u>

Freedom of speech is one of the founding principles of the United States and is enshrined in the First Amendment to the Constitution. The Supreme Court has declared the United States has a "profound national commitment" to protecting and promoting free speech, *New York Times Co.*, 376 U.S. at 270, which it characterized as "the matrix, the indispensable condition, of nearly every other form of freedom." *Palko v. State of Connecticut*, 302 U.S. 319, 327 (1937). A key element of this is anonymous speech, which "protect[s] unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). Without these rights, our other fundamental rights, such as the right to vote, would wither and die.

These First Amendment protections apply to online speech. *Reno v. ACLU*, 521 U.S. 844, 870 (1997). This is in part because the internet is "a valuable forum

for robust exchange and debate." *Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004). On the internet, the right to "anonymity facilitates the rich, diverse, and far ranging exchange of ideas." *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1092, 1097 (W.D. Wash. 2001).

Properly protecting rights to free and anonymous online speech requires a rigorous application of free speech principles when, as here, plaintiffs ask U.S. courts to unmask the identities of anonymous speakers on U.S.-based platforms.

B.  Online Speech on U.S.-based Platforms Can Originate Anywhere and Reach a Global Audience.

The nature of modern online speech means that nearly all speech posted on U.S.-based services has a chance of being viewed in a foreign jurisdiction, and that many users' exact locations and identities will be unknown even to these same services. Courts must consider these elements of online speech when deciding how to analyze Section 1782 applications that seek to unmask anonymous speakers based on an asserted nexus with foreign audiences or plaintiffs.

The internet has connected speakers across the globe more than any other technology in human history. Email and other direct messaging services allow for instantaneous person-to-person connection across countries and borders. Social media platforms allow speakers to reach even wider audiences across the planet, all with a single post.

4

On platforms such as Instagram, Facebook, Reddit, and Twitter (now doing business as X Corp.), people around the world with an internet connection can follow posts from their favorite speakers. These and other platforms allow speakers to make their speech visible to everyone, which allows any interested audience to view that speech, regardless of a national border or whether they "follow" that person. Users can also search these platforms for content on a specific topic and review speech from creators that they do not directly follow. The result: speech posted by U.S.-based speakers on U.S.-based platforms can reach users abroad, and speech posted by speakers abroad reaches U.S.-based users on those same platforms.

Some social media users have amassed staggering numbers of followers, including in some cases more followers than people who live in the United States.[2] Online speakers with large numbers of social media followers are all but guaranteed to reach audience members in many countries. However, celebrity status is not required for online speech to cross borders and influence others. Speakers with relatively modest networks may still find their speech reaches foreign audiences, either intentionally or inadvertently. These posts can be of

---

[2] For example, American actress and musician Selena Gomez has nearly 500 million followers. International soccer stars Cristiano Ronaldo and Leo Messi have even more followers. Brian Frederick, *The Top 100 Social Media Influencers Worldwide*, SEARCH ENGINE JOURNAL (Jan. 10, 2023), https://www.searchenginejournal.com/top-social-media-influencers/475776/.

incredible consequence and social value—when Darnella Frazier posted her recording of George Floyd's murder to her Facebook and Instagram pages, it helped spark protests worldwide and calls for social and legal change.[3]

In addition to facilitating speech to wide audiences, internet services also allow speakers to share their thoughts anonymously. Many online platforms do not require users to provide their real names when signing up for an account and many online speakers prefer to use anonymous or pseudonymous usernames to retain their privacy, safety, and protect themselves from real-world dangers and backlash for their protected speech. Survivors of domestic violence are one example.[4] Some anonymous social media accounts can also attract large numbers of followers.[5]

Some online speakers also prefer to keep information about their physical location private for privacy or personal safety reasons. Widely available internet technologies such as virtual private networks ("VPNs") allow users to access the

---

[3] Nicholas Bogel-Burroughs & Marie Fazio, *Darnella Frazier captured George Floyd's death on her cellphone. The teenager's video shaped the Chauvin trial*, THE NEW YORK TIMES (Jul. 7, 2021), https://www.nytimes.com/2021/04/20/us/darnella-frazier-video.html.

[4] Samantha Allen, *How Facebook Exposes Domestic Violence Survivors*, THE DAILY BEAST (May 20, 2015), https://www.thedailybeast.com/articles/2015/05/20/how-facebook-exposes-domestic-violence-survivors.

[5] For example, in 2021 an anonymous twitter user with the handle @TheWeirdWorld (display name "Shower Thoughts") had 8.1 million followers. Leticia Polese, *10 Non-Verified Twitter Accounts With the Most Followers,* AUDIENSE (Sep. 12, 2021), https://resources.audiense.com/en/blog/top-non-verified-twitter-accounts-with-the-most-followers.

internet without revealing their actual internet protocol ("IP") address, which can reveal their general physical location. Other popular privacy-protecting technologies such as Apple's iCloud Private Relay allow users to conceal some of their private information from the websites they visit.[6] These technologies are legitimate, legal, and can help protect users' browsing activity, identity, and location, allowing for enhanced privacy, safety, and autonomy online. They also make it more difficult for online platforms—and by extension courts—to know a user's exact location.

## II.   Section 1782 Should Not Be Used to Circumvent the Rigorous *Highfields* Test for Unmasking Anonymous Online Speakers.

Plaintiff hey, Inc. is attempting to use Section 1782 to unmask an anonymous online speaker that it alleges criticized the company. Unfortunately, the district court's analysis of Section 1782 declined to apply the *Highfields* test for unmasking anonymous speakers. That holding, if allowed to stand, risks exposing anonymous speakers to intimidation and harassment and leads to results at odds with our nation's commitment to free speech.

---

[6] *About iCloud Private Relay* (June 2, 2023), https://support.apple.com/en-us/HT212614.

A.    The *Highfields* Test for Unmasking Anonymous Speakers Protects Free Speech.

U.S. courts apply a well-established legal analysis when asked by plaintiffs to unmask anonymous speakers. This test was first articulated in *Dendrite Intern., Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001) and then applied in the Ninth Circuit[7] in *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005).

This *Highfields* test requires courts to "go beyond the pleadings and determine if there is an evidentiary basis for concluding that the requested discovery is appropriate," *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216, at *5 (N.D. Cal. Sept. 9, 2021), and "consists of two steps. First, the party seeking the disclosure must demonstrate a prima facie case on the merits of its underlying claim. Second, the court balances the need for the discovery against the First Amendment interest at stake." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022) (*citing Dendrite*, 775 A.2d at 760-61; *Highfields*, 385 F. Supp. 2d at 974-75).

Under the first step of *Highfields,* applicants must show "real evidentiary basis" for their claim in order to unmask an anonymous speaker. 385 F. Supp. 2d at

---

[7] As explained above, while nearly every district court in the Ninth Circuit applies *Highfields* in unmasking cases, the Ninth Circuit itself has not formally adopted the test. *Supra* note 1.

8

975. As further explained, "the plaintiff must adduce *competent evidence*" that would be necessary "to prevail under at least one of the causes of action plaintiff asserts." *Id.* at 975–76 (emphasis in the original). Consequently, "[t]he court may not enforce the subpoena if, under plaintiff's showing, any essential fact or finding lacks the requisite evidentiary support." *Id.*

Even if the applicant satisfies the first step of *Highfields*, under the second step the court must balance the interests that would be impacted if the anonymous speaker's identity was revealed. The interests the court may consider include the free speech interests of the defendant, the court, the audience, and of course the anonymous speaker. *See Highfields*, 385 F. Supp. 2d at 975 (discussing the free speech interests of the anonymous speaker and the audience).

District courts in the Ninth Circuit and across the U.S. routinely and properly apply *Highfields* and similar standards to ensure that the identities of anonymous online speakers are not revealed without parties providing an adequate showing and considering the interests of all parties. *See, e.g.*, *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 876; *Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Twp.*, No. 12-CV-10803, 2014 WL 10319321 (E.D. Mich. July 2, 2014); *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009).

B.     <u>The Section 1782 *Intel* Test was Not Designed to Help Courts Decide When to Unmask Anonymous Online Speakers and Routinely Fails to Protect Free Speech as a Result.</u>

Section 1782 is intended to assist discovery in foreign proceedings, not as a guide for deciding when to unmask speakers on U.S. platforms. Based on laws from the 1800s, Section 1782 was passed by Congress "to provide federal-court assistance in gathering evidence for use in foreign tribunals."[8] The law's amendments also predate today's internet and none contemplate its use to unmask anonymous speakers, online or off. The Supreme Court established the legal standard for Section 1782 in *Intel Corp. v. Advanced Micro Devices, Inc*, a 2004 multi-jurisdictional and international antitrust case between two large companies. 542 U.S. at 241. The *Intel* case did not involve an attempt to unmask an anonymous speaker and was decided at a time when social media platforms did not exist in their current form.[9] The *Intel* test was never intended to unmask anonymous speakers on U.S. platforms and lacks clarity for those situations. The

---

[8] *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); The Committee on International Commercial Disputes, *28 U.S.C. § 1782 As a Means of Obtaining Discovery in Aid of International Commercial Arbitration—Applicability and Best Practices*, THE NEW YORK CITY BAR (Feb. 29, 2008), https://www.nycbar.org/pdf/report/1782_Report.pdf.

[9] In 2004, approximately 25% of Americans had a home broadband internet connection. By 2021 that number had risen to 77% and is likely even higher today. *Internet/Broadband Fact Sheet*, PEW RESEARCH CENTER (Apr. 7, 2021), https://www.pewresearch.org/internet/fact-sheet/internet-broadband/#home-broadband-use-over-time.

*Highfields* test provides this clarity and is a better fit than *Intel* alone when an application involves an attempt to unmask a speaker, for several reasons.

*First*, under *Intel* a plaintiff applying for an unmasking subpoena does not need a pending lawsuit in a foreign tribunal and, as a result, unmasking plaintiffs do not ordinarily provide evidence supporting their use of Section 1782 to obtain a speaker's identity, as *Highfields* requires. An *Intel* applicant must allege that the discovery sought will be used in a foreign proceeding where a "dispositive ruling" by a foreign tribunal is "within reasonable contemplation." 542 U.S. at 258–59. That may make sense in the context of an international civil litigation involving corporations and not anonymous speakers, but given the nature of online speech described above, Section 1782 applicants can easily seek to harass speakers with threats of suit in countries with weak speech protections and where the speaker's posts happen to be visible online. Speakers on U.S.-based services should not be subject to baseless threats to their anonymity and the possibility of costly litigation abroad.

*Second,* plaintiffs can style their unmasking demands as Section 1782 applications and circumvent *Highfields* by exploiting the lack of known information about the targeted anonymous speaker. Section 1782's standard does not consider a speaker's location, and speakers may not have an opportunity to provide it because many applications under the statute are *ex parte* by nature. An

anonymous speaker may also have compelling reasons not to disclose their location.[10] But some courts considering Section 1782 applications under *Intel* have said *Highfields* only applies to users who are clearly U.S. citizens or residents. *See, e.g.*, *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 706 n.6 (N.D. Cal. 2022) (finding *Highfields* does not apply where the anonymous speaker is a "foreign citizen speaking outside U.S. territory"). The result: plaintiffs can take advantage of this information vacuum and circumvent *Highfields* protections for anonymous speakers by using Section 1782. This state of affairs is misguided and puts speakers at risk.

*Finally*, while *Intel* allows for consideration of a plaintiff's ulterior motives, that is no substitute for applying *Highfields* and ensuring that there is competent evidence to justify piercing anonymous speech rights and unmasking a person. Indeed, courts have not required Section 1782 plaintiffs to provide competent evidence for their underlying claim in order to unmask a person. *See, e.g.*, *Zuru*, 614 F. Supp. 3d at 708 ("This Court won't require Zuru to satisfy *Highfields's* 'real evidentiary basis' standard."); *In re Eshelman*, No. 5:23-MC-80015-EJD, 2023 WL 3361192, at *1 (N.D. Cal. May 9, 2023) (applying the *Intel* test but not

---

[10] Indeed, the residency or location will often be unknown to the U.S.-based online service as well. This is because many U.S.-based online services do not ask for a user's citizenship and, as discussed at *supra* section I, a speaker's use of privacy-protecting software may obscure their actual location.

*Highfields'* "real evidentiary basis" standard). Without some minimal evidence in support of an unmasking application, courts are not able to properly consider whether to exercise their discretion under *Intel* to reject applications that seek to "circumvent" U.S. policy or that are "unduly intrusive or burdensome." [11] The result is that plaintiffs can easily abuse Section 1782 to unmask and harass anonymous online critics, including speakers in the U.S.

## III. Foreign and Domestic Litigants are Exploiting Section 1782 to Improperly Unmask Anonymous Online Speakers on U.S.-Based Platforms.

Congress did not contemplate Section 1782 as a tool for the powerful to unmask anonymous speakers, but foreign and domestic litigants have brought Section 1782 cases to unmask and potentially silence online critics who are engaged in online speech. It should not be surprising that some would try to use Section 1782's discovery mechanisms as a loophole to thwart proper judicial oversight. As the *Dendrite* case itself highlighted, litigants who do not like the content of online anonymous speech will often misuse "discovery procedures to ascertain the identities of unknown defendants in order to harass, intimidate or

---

[11] In addition to Section 1782's foreign proceedings requirement, *Intel* held that federal courts have discretion to reject a Section 1782 application that "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" or that is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

silence critics in the public forum opportunities presented by the Internet."
*Dendrite*, 775 A.2d at 771.

Plaintiffs in these cases usually allege that critical speech defamed them in a foreign country and that they need a U.S.-based service to identify the user because they plan to take advantage of foreign defamation laws, which rarely reflect the U.S.'s free speech principles.[12] Below, *amici* describe how foreign plaintiffs have been employing Section 1782 for quite some time to unmask anonymous critics and its use has been on the rise.[13] Further, and even more concerning, *amici* identify an emerging risk that American plaintiffs are also trying to use Section 1782 to circumvent U.S. law and constitutional protections for free speech.

A.    Foreign Plaintiffs Frequently Exploit Section 1782 to Unmask Online Critics.

Foreign litigants have succeeded at exploiting Section 1782 to force U.S. technology platforms to unmask anonymous online critics.[14] For example, the

---

[12] The use and success rate of Section 1782 seeking to unmask anonymous online speakers are on the rise. Edward F. Maluf, Eddy Salcedo, & Owen R. Wolfe, *The Expanding Use of 28 USC § 1782*, SEYFARTH SHAW LLP (Jun. 7, 2021), https://www.seyfarth.com/news-insights/the-expanding-use-of-28-usc-1782.html.

[13] J. Alexander Lawrence & Geary Choe, *Foreign Companies Can Use 28 U.S.C. § 1782 to Unmask Anonymous Internet Posters,* MORRISON & FOERSTER LLP (Dec. 10, 2019), https://www.lexology.com/library/detail.aspx?g=fe50a462-8926-4c8f-aa5e-b113e41469f7.

[14] The court in *In re Plan. & Dev. of Educ., Inc*. recognized this concerning trend. "As a substantial number of applications have been filed within the last year

plaintiff in *In re Team Co., Ltd*. was a foreign corporation that operated a restaurant in its home country. No. 22-MC-80183-VKD, 2023 WL 1442886, at *1 (N.D. Cal. Feb. 1, 2023). An anonymous Google account user posted a "one-star" rating on the restaurant's Google Map review page. The plaintiff alleged that the review was hurting its business and planned to sue the anonymous user in a foreign court. The plaintiff filed a Section 1782 application for a subpoena that would force Google to uncover the identity of the critic. Google moved to quash, citing the importance of U.S. free speech principles, but the court denied Google's motion. *Id*. at 2–4.

Foreign corporations seem eager to quell criticism at home by taking advantage of U.S. laws and courts, and the *In re Team Co*. example is only one of many. *Id.*; *see also Med. Corp. Seishinkai v. Google LLC*, No. 5:22-MC-80282-EJD, 2023 WL 3726499 (N.D. Cal. May 30, 2023) (foreign medical corporation sued to uncover the identity of an anonymous poster of a one-star review); *In re Sungrove Co., Ltd.*, No. 23-MC-80080-BLF, 2023 WL 2699987 (N.D. Cal. Mar. 28, 2023) (foreign website company sued to uncover the identity of poster of a negative review article). Using Section 1782, these plaintiffs have been able to

---

seeking personally identifiable information from Google for the purpose of identifying of negative reviewers, the Court is concerned that the influx of these requests will create a chilling effect on the speech of anonymous reviewers or embolden entities which seek only to harass or intimidate the speakers." No. 21-MC-80242-JCS, 2022 WL 228307, at *5 n.4 (N.D. Cal. Jan. 26, 2022).

pierce the anonymity of online speakers which would have been ordinarily protected under *Highfields* and U.S. free speech principles. *Cf. Mirza v. Yelp, Inc.*, No. 21 MISC. 621 (LGS), 2021 WL 3772039, at *1–3 (S.D.N.Y. Aug. 25, 2021) (in a non-Section 1782 case, the court applied *Highfields* and refused to enforce plaintiff's subpoena to force Yelp to unmask anonymous user who criticized plaintiff's cosmetic products).

Individuals have also started exploiting Section 1782 to silence criticism. In *In re Al-Baldawi*, a foreign doctor sought a subpoena from RateMDs Inc. to uncover the poster of a negative review about his medical practice. No. 5:22-MC-80329-EJD, 2023 WL 3603731 (N.D. Cal. May 23, 2023). In *Uchida v. YouTube, LLC*, a foreign animator sought information from YouTube to help identify a poster of vague statements that he claimed were critical of his professional capabilities. No. 22-MC-80155-JSC, 2022 WL 4923241 (N.D. Cal. Oct. 3, 2022). In each of these examples federal district courts granted the Section 1782 application after applying *Intel* in isolation. The few courts to even discuss *Highfields* did so only when the technology company or anonymous speaker argued that it should apply in a motion to quash. *See, e.g.*, *Tokyo Univ.* 2021 WL 4124216 (court initially granted the *ex parte* application, but then granted Twitter's motion to quash after applying the *Highfields* test).

16

With sufficient resources, it seems that any foreign plaintiff—corporation or individual—can currently use Section 1782 to conscript U.S. courts to unmask and quell free speech taking place on U.S.-based platforms.

B. <u>American Plaintiffs Are Exploiting Section 1782 to Circumvent U.S. Free Speech Protections.</u>

Because the lower courts have not consistently applied *Highfields* in Section 1782 applications, even Americans are trying to utilize it to intimidate and harass other Americans.

In a recent case in the Northern District of California, a wealthy American named Fredric Eshelman tried to use Section 1782 to unmask another American who had anonymously criticized him online. Eshelman Declaration, *In re Eshelm*an, 2023 WL 3361192 (Dkt. No. 1-4). Despite knowing that his critic was an American,[15] Eshelman claimed that the Doe's speech had defamed him to foreign business contacts and that he planned to sue abroad. Application at 1, *In re Eshelman*, (Dkt. No. 1-1). Eshelman did not demonstrate any "competent evidence" that he had been harmed in another country or explain how that unproven harm was actionable under foreign law. Doe's speech was clearly

---

[15] Doe revealed they are an American citizen in a voicemail left for Eshelman. Eshelman Declaration, at Exhibit 2.

protected opinion speech under the First Amendment, but Eshelman tried to use Section 1782 to circumvent the free speech protections of *Highfields*.

Recognizing that the speech, speaker, and target of the criticism were all American, the court expressed concern about Eshelman's case[16] but applied the *Intel* test and granted Eshelman's application. *Id.* at \*4. Google and Doe[17] both moved to quash and argued that an American should not be allowed to silence critical speech from another American using Section 1782 and that *Highfields* should also apply. Google and Doe also noted that Eshelman had no evidence of harm or analysis of his prima facie case under foreign law. Doe Motion to Quash at 11-12, 17, *In re Eshelman*, (Dkt. No. 19); Google Motion to Quash at 2, 5, *In re Eshelman*, (Dkt. No. 23). Eshelman retreated and voluntarily withdrew his subpoena rather than respond to Google and Doe's arguments.[18]

Despite this victory for free speech, Eshelman's attempt to circumvent *Highfields* and the First Amendment is an example of Americans seeking to use

---

[16] *In re Eshelman*, 2023 WL 3361192 at \*3 ("the Court will remark that it is somewhat curious as to Dr. Eshelman's reasons for bringing a defamation suit in Germany or India as opposed to the United States, given that both of Dr. Eshelman's companies appear to be headquartered in the United States and the anonymous speaker also appears to be American.").

[17] The ACLU of Northern California and Public Citizen jointly represented Doe in this case.

[18] Press Release, *In Free Speech Win, Millionaire Withdraws Attempt to Identify Anonymous Online Critic*, AMERICAN CIVIL LIBERTIES UNION (July 13, 2023), https://www.aclu.org/press-releases/in-free-speech-win-millionaire-withdraws-attempt-to-identify-anonymous-online-critic.

Section 1782 to bully and censor their critics. If the district court had applied *Highfields* to Eshelman's initial application, the case would have been resolved at an earlier juncture. Eshelman could not have provided a "real evidentiary basis" for his claims and the court would have rejected his application outright. Guidance from this Court is necessary to ensure that people simply offended by online speech cannot use Section 1782 to circumvent protections and harass, intimidate, and silence their American critics.

## IV. U.S. Courts Should Apply the *Highfields* Test to All Section 1782 Applications Seeking to Unmask Anonymous Online Speakers.

American free speech principles are implicated by all Section 1782 applications to unmask anonymous speakers. The *Highfields* test is a necessary safeguard for free speech and protects not only the interests of the speaker, but also the rights and interests of the U.S.-based audiences, platforms, and courts. Courts should apply *Highfields* to all Section 1782 unmasking applications, regardless of the citizenship or residency of the speaker.

### A. Applying *Highfields* to all Section 1782 Unmasking Cases Is Compatible with the Statute's Purposes.

The application of *Highfields* to all Section 1782 unmasking applications aligns with three core purposes of the statute: assisting foreign tribunals, preventing the circumvention of U.S. policy, and avoiding unduly burdensome

discovery requests. First, the evidentiary standard of *Highfields* would only apply to the narrow class of Section 1782 applications that involve unmasking and would not prevent petitioners from seeking information from U.S. entities or from using that information in foreign tribunals. Requiring unmasking plaintiffs to provide some basis for their claim at the Section 1782 stage only impedes those who do not actually intend to bring a foreign litigation and are attempting to abuse Section 1782 to silence or harass their online critics. Relatedly, the application of *Highfields* to all Section 1782 unmasking applications also furthers the U.S. Supreme Court's guidance that the statute be unavailable for attempts to circumvent U.S. policy or seek discovery that is unduly burdensome, as articulated in the *Intel* test's factors granting courts the discretion to reject Section 1782 applications. *Intel*, 542 U.S. at 264–65.[19] As illustrated above, we are seeing a proliferation of such requests under Section 1782.

Recognizing all of this, some district courts in the Ninth Circuit have decided that First Amendment interests require the application of *Highfields* to

---

[19] Indeed, courts applying *Highfields* in the context of Section 1782 unmasking applications often tie that analysis to the third or fourth *Intel* factors. *See Tokyo Univ.*, 2021 WL 4124216, at *2–3 (applying *Highfields* under the fourth *Intel* factor); *In re Yasuda*, No. 19-MC-80156-TSH, 2019 WL 7020211, at *6 (N.D. Cal. Dec. 20, 2019) (same); *In re PGS Home Co. Ltd.*, No. 19-MC-80139-JCS, 2019 WL 6311407, at *6 (N.D. Cal. Nov. 25, 2019) (same); *In re Takada*, No. 22-MC-80221-VKD, 2023 WL 1452080, at *3–4 (N.D. Cal. Feb. 1, 2023) (discussing *Highfields* in the context of analyzing Intel's third factor).

attempts to unmask anonymous speakers using Section 1782, even where the speaker appears unprotected by the First Amendment. For example, the court in *Tokyo Univ.* applied the *Highfields* test even where the petitioner was a Japanese company and the anonymous speaker appeared to be a Japanese citizen. 2021 WL 4124216, at *1–2. That court said that, irrespective of the speaker's citizenship, "an author's decision to remain anonymous…is an aspect of the freedom of speech..." *Id.* at *3 (internal citation omitted). To that end, the court said that it must "consider the potential chilling effect on First Amendment rights of ordering disclosure of an anonymous speaker's identity." *Id.* at *3; *see also In re PGS Home Co. Ltd.*, No. 19-MC-80139-JCS, 2019 WL 6311407, at *6 (N.D. Cal. Nov. 25, 2019) (applying *Highfields* to Section 1782 application and quashing unmasking subpoena). Other courts have refused to apply *Highfields* where the speakers appeared to be a foreign citizen living outside the U.S. *See, e.g., Zuru,* 614 F. Supp. 3d at 706 n.6. Yet an examination of the broader free speech interests–including those of U.S.-based audiences, platforms, and courts–shows why *Highfields* is necessary where a plaintiff seeks to unmask a speaker using Section 1782.

B.  _Highfields_ Should Apply to all Section 1782 Unmasking Applications
Due to the Compelling Free Speech Interests of U.S. Audiences,
Platforms, and Courts.

The _Highfields_ protections for anonymous speech are appropriate wherever

unmasking attempts implicate interests "rooted in the First Amendment to the

Constitution of the United States." _Highfields_, 385 F. Supp. 2d at 974. Some

district courts have refused to apply _Highfields_ in cases involving foreign citizens

speaking outside of U.S. territory (such as the present case on appeal) but the

interests of speakers are not the only ones implicated by attempts to unmask

anonymous speakers. Courts must also consider other free speech interests,

including the interests of U.S.-based audiences for anonymous speech, the interests

of U.S. platforms that host speech and receive Section 1782 subpoenas, and the

interests of the deciding court in safeguarding free speech.

The analysis in the case of _In re DMCA Subpoena to Reddit, Inc._ provides a

useful framework for assessing the U.S. speech interests implicated by unmasking

demands. In that case, the court considered an attempt to unmask an anonymous

speaker using copyright law. 383 F. Supp. 3d 900, 905 (N.D. Cal. 2019). There, the

magistrate judge had evidence that the speaker was a foreign citizen living abroad

and therefore not directly protected by the First Amendment. _Id._ at 908

(anonymous speaker "resides outside the United States"); Declaration of John Doe,

_In re DMCA Subpoena to Reddit, Inc._, (Dkt. No. 8-1) ¶ 6 ("I am a foreign citizen,

residing in the country of my citizenship"). But it applied the *Highfields* test to protect the free speech interests of three key actors: (1) the potential audience for the speech, (2) the U.S. service hosting the speech, and (3) the court charged with upholding constitutional principles. *In re DMCA Subpoena to Reddit, Inc.*, 383 F. Supp. 3d at 909 ("[b]ased on the involvement of the United States Court's procedures by and against United States companies and the audience of United States residents, as well as the broad nature of the First Amendment's protections, the Court finds that the First Amendment is applicable here."). *In re DMCA*'s analysis is equally appropriate for Section 1782 unmasking cases, where applicants seek information from U.S. companies using U.S. courts and laws about speakers who—due to the nature of online speech—may be U.S.-based or have a U.S. audience.

The application of *Highfields* to all attempts to unmask anonymous speakers with Section 1782 would protect these interests without being too rigid. It would acknowledge the nature of online speech, allowing the court to properly consider broader free speech interests and the fact that a speaker's real location may not be known. Its evidentiary requirement helps prevent attempts to harass and intimidate online critics. This requirement is both stringent and adaptable: as a default, including when the speaker's location is unknown, courts applying *Highfields* would naturally require evidence that meets the most speaker-favorable evidentiary

standard, which will often be the one under U.S. defamation law.[20] Doing so

ensures no U.S. citizen or resident is inadvertently deprived of their First

Amendment rights or subjected to less-stringent foreign defamation law. Finally,

when a court is presented with a reasonable basis for believing the speaker is a

foreign citizen abroad, it can reference the relevant evidentiary requirement of the

applicable country and claim in question as part of the *Highfields* analysis.

Building on the court's reasoning *In re DMCA*, this Court should require all

courts considering Section 1782 unmasking applications to apply *Highfields* based

on three interrelated interests.

### 1. Free Speech Rights of U.S. Audiences

U.S. audiences have an interest in reading and enjoying online speech.

Anonymous speech posted on U.S. platforms, even by a foreign citizen living

abroad, is viewable by American residents and citizens. Those audience members

are protected by the First Amendment, which applies even if they are recipients

---

[20] Even in the present case, both hey, Inc. and Twitter assumed that the First
Amendment protected the speech here and that *Highfields* was the appropriate test.
The district court declined to apply *Highfields* on its own. *See Ex Parte*
Application (Dkt. No. 1), Motions to Quash (Dkt. Nos. 6 and 12), Reply in Support
(Dkt. No. 16), contra *hey, Inc. v. Twitter, Inc.*, No. 22-MC-80034-DMR, 2023 WL
3874022 (N.D. Cal. June 6, 2023) (Order denying Motions to Quash); *see also*
Appellants' Opening Brief (Dkt. No. 11) at 13 ("Hey never argued in its opposition
to the motion to quash that the *Highfields* test was inapplicable, but instead, argued
why it satisfies the *Highfields* test.").

rather than speakers. *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to *receive* information and ideas.") (emphasis added); *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743–44 (9th Cir. 2021) (the First Amendment protects the right to receive information in the U.S. from outside U.S. territory), cert. denied sub nom. *David v. Kazal*, 142 S. Ct. 1674 (2022); *see also Desai v. Hersh*, 719 F. Supp. 670, 676 (N.D. Ill. 1989) ("The [F]irst [A]mendment shields the actions of speakers for the benefit of their audience."); *Bursey v. United States*, 466 F.2d 1059, 1083–84 (9th Cir. 1972) ("Freedom of the press was not guaranteed solely to shield persons engaged in newspaper work from unwarranted governmental harassment. The larger purpose was to protect public access to information."). Applying the *Highfields* test to all Section 1782 unmasking applications vindicates the First Amendment right of American audiences to view speech on all manner of issues. *See United States v. 18 Packages of Mags.*, 238 F. Supp. 846, 848 (N.D. Cal. 1964) ("[t]he First Amendment surely was designed to protect the rights of readers and distributors of publications no less than those of writers or printers.").

### 2. Free Speech Concerns of U.S. Online Services

Section 1782 applications usually seek identifying information from American services that host online discussions and commentary, such as Google, Reddit, Twitter, and others. These platforms, at their best, function to promote First

Amendment interests by hosting and protecting anonymous online speech and speakers. *See* Twitter Mot. To Quash (Dkt. No. 6) at 6 (arguing that "[a]nonymous online speech is protected by the First Amendment to the United States Constitution."); Yelp Inc.'s Opening Brief*, at 14, Yelp, Inc. v. Hadeed Carpet Cleaning, Inc.*, 289 Va. 426 (2015) ("A rule that makes it too easy to remove the cloak of anonymity will deprive the marketplace of ideas of valuable contributions."). For this reason, U.S.-based users rely on these services to connect, organize, and speak on issues of the day. Similarly, activists abroad that look to the United States and the First Amendment as a beacon of liberty rely on these platforms to speak anonymously.

Allowing unmasking plaintiffs to take advantage of Section 1782 without making the requisite showing under *Highfields* threatens the vitality of free speech on these U.S.-based platforms. First, it discourages anonymous speech on the platforms by exposing users to chilling legal demands for their identities. Relatedly, it burdens platforms with subpoenas for user information, which require personnel time to process and legal resources to fight (because Section 1782 applications are often *ex parte*, platforms may not get the opportunity to fight for their users' free speech). As a result, many platforms may feel pressured to

discourage or even prohibit anonymous accounts, for fear of inviting Section 1782 demands from aggrieved plaintiffs.[21]

### 3. Free Speech Interests of U.S. Courts

Section 1782 applications also seek to take advantage of American law and force American courts to assist with unmasking anonymous speakers. American courts routinely uphold the "profound national commitment" to free speech. *See New York Times Co.* 376 U.S. at 270. This interest in protecting free speech applies with full force to the discovery process. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–35 (1984); *Herbert v. Lando*, 441 U.S. 153, 178 (1979) (Powell, J., concurring) ("In supervising discovery . . . a district court has a duty to consider First Amendment interests as well as the private interest of the plaintiff.").

It should also apply where that discovery is against a U.S.-based platform with U.S.-based users and a potential U.S. audience, even though the information

---

[21] *See* Press Release, *ACLU Commends Supreme Court Decisions Allowing Free Speech Online To Flourish*, AMERICAN CIVIL LIBERTIES UNION (May 18, 2023), https://www.aclu.org/press-releases/aclu-commends-supreme-court-decisions-allowing-free-speech-online-to-flourish ("Twitter and other apps are home to an immense amount of protected speech . . . the rules we apply to the internet should foster free expression, not suppress it.") (discussing Section 230 of the Communications Decency Act); *see also* Press Release, *EFF Warns Supreme Court that Users' Speech is at Stake When Increasing Platforms' Liability*, ELEC. FRONTIER FOUND (Jan. 19, 2023), https://www.eff.org/press/releases/ff-warns-supreme-court-users-speech-stake-when-increasing-platforms-liability ("Platforms facing a potential onslaught of litigation are going to be unwilling to take a chance on provocative or unpopular speech.") (same).

is sought for potential foreign litigation. *In re Plan.* 2022 WL 228307 at *4 n.3 (observing that the "principles underlying the First Amendment may counsel a court of the United States against exercising its discretion" to grant a Section 1782 application). When a court allows a plaintiff to strip a user's anonymity without an evidentiary basis, it may lead to harassment, intimidation, or censorship of non-citizens and citizens alike. Authoritarian nations may routinely punish speakers for dissent and disfavored commentary, but U.S. courts should not approve applications under Section 1782 that risk undermining free speech principles.

## CONCLUSION

This Court should hold that district courts must apply the *Highfields* test to all attempts to use 28 U.S.C. § 1782 to unmask anonymous online speakers.

Dated: September 27, 2023

Respectfully submitted,

/s/ *Matthew T. Cagle*

Matthew T. Cagle (SBN 286101)
Nicolas A. Hidalgo (SBN 339177)
Nicole A. Ozer (SNB 228643)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
mcagle@aclunc.org
nhidalgo@aclunc.org
nozer@aclunc.org

*Attorneys for Amici Curiae*

**CERTIFICATE OF SERVICE FOR ELECTRONIC FILING**

I hereby certify that on September 27, 2023, I electronically filed the foregoing Amici Curiae Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which effects service upon all counsel of record.

Dated: September 27, 2023

/s/ *Matthew T. Cagle*

Matthew T. Cagle
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
mcagle@aclunc.org

*Attorney of Record for Amici Curiae*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief contains 6,511 words, excluding the items exempted by Fed. R. App. P. 32(f), and complies with the length specifications set forth by Fed. R. App. P. 29(a)(5). I further certify that this brief was prepared using 14-point Times New Roman font, in compliance with Fed. R. App. P. 32(a)(5) and (6).

Dated: September 27, 2023

/s/ *Matthew T. Cagle*
Matthew T. Cagle
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
mcagle@aclunc.org

*Attorney of Record for Amici Curiae*